# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **MICHAEL W. SHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.  3:05-CV-245** |
| | ) | **(Phillips)** |
| **J.J.B. HILLIARD, W.L. LYONS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff has sued his former employer alleging that he was subjected to a sexually hostile work environment in violation of Title VII, 42 U.S.C. § 2000e, and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-301.  Plaintiff has also alleged that the hostile work environment violated his contractual right under the company's Code of Ethics to be free from sexual harassment, and has sued defendants for breach of contract.  This matter is before the court on defendants' motion for summary judgment.  For the reasons which follow, defendants' motion will be granted in part and denied in part.

## Background

The facts in this case, taken in a light favorable to the plaintiff are as follows: Hilliard Lyons is a wholly-owned subsidiary of PNC.  Hilliard Lyons hired plaintiff Shell as a financial consultant on October 5, 2001.  At the time Shell joined Hilliard Lyons, the Knoxville office occupied portions of two office buildings.  Most of the brokers and staff

were located in one building, with just a few located in the other. The building with the larger number of employees also housed the office kitchen. The building with the smaller group of employees was referred to as the "Annex." Throughout his employment, Shell worked out of the Annex in an office beside Stan Shelton.

Shelton was a long-time Hilliard Lyons broker who had formerly been one of the top producing brokers in the Knoxville area, but had seen his production decline after 2000. By the time Shell arrived at Hilliard Lyons, Shelton was an average producer. Shelton exercised no supervisory authority over Shell. Shortly after beginning his employment with defendants, Shelton began sending sexually explicit and suggestive e-mails and documents involving Shell and other male employees of Hilliard Lyons. At times, Shelton posted some of the documents on the office refrigerator, placed a copy in coworkers' mailboxes, put them on coworkers' desks, or sent them around by e-mail.

Shell complained to his supervisor, David McDonald, on four or five occasions that McDonald needed to "calm Shelton down" and that, "it's going too far." Following the conversation, McDonald warned Shelton to leave Shell alone, but did not otherwise reprimand Shelton. Shelton's conduct continued despite Shell's complaints.

On one occasion, Shell states that he walked past Shelton's office door while McDonald was sitting on Shelton's couch. Shelton said "Look at that bootie." Shell then said to McDonald, "That's what I'm talking about," and walked away without further

comment. Another time toward the end of 2002, when Shell was again walking past Shelton's office, Shelton commented that, "You look good in that car," referring to a new car that Shell had recently bought. Shell stated that Shelton made the statement in a flirtatious tone of voice, as he would say it to a female.

Shell stated that after Brian Donaldson became branch manager in January 2003, Shelton's conduct escalated. Not only did Shelton send his lewd materials via the company computer and intranet, he often posted sexually related materials in the office kitchen on the refrigerator for all employees and customers to see. Additionally, Shelton's conduct directly toward Shell increased in both frequency and severity. Shell reported to Donaldson a parody of the PNC Code of Ethics that Shelton had drafted and distributed around the Knoxville office commenting on the relationship between Shell and his girlfriend. Also, during this meeting, Shell related an incident that had occurred in February 2003 in which Shelton had ordered a brochure for cruises geared toward homosexuals to be sent to the Knoxville office under Shell's name. Upon receiving the brochure, Shelton took it to Donaldson's administrative assistant, Rebecca Lynch, and prompted her to write a note to Shell stating that Donaldson wanted to have material such as this sent to Shell's home. When he received the brochure with the fake note, Shell became upset because he thought his supervisor would think he was homosexual.

Shell testified concerning a second incident involving the travel brochure. Shelton had pasted a picture of Shell's head onto two of the individuals portrayed on the

cover of the travel brochure. Shelton made copies of the altered cover page and inserted them into promotional materials that were distributed at a lunch meeting attended by several brokers.

After his meeting with Shell, Donaldson met with Shelton and confronted him with Shell's allegations. Donaldson told Shelton that he viewed his conduct with Shell "as wrong, inappropriate for the work place, and it had to stop and it had to stop immediately," but did not otherwise reprimand him.

After April 2003, Shell worked from home more often due to Shelton's continuous harassment. Shell resigned his employment with Hilliard Lyons on August 15, 2003. Shell filed the instant action on May 12, 2005, alleging a hostile work environment in violation of Title VII and the Tennessee Human Rights Act, and alleging breach of contract against Hilliard Lyons.

Defendants have moved the court for summary judgment stating that there is no genuine issue as to any material fact and summary judgment is appropriate as a matter of law on all counts of plaintiff's complaint.

## Analysis

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

## Title VII Claim

Defendants assert that plaintiff's claim for sexual harassment under Title VII fails as a matter of law because (1) plaintiff cannot show that he was harassed because of his sex; (2) he cannot show that Shelton's alleged improper conduct was sufficiently severe or pervasive to alter his work environment; and (3) he cannot show that defendants acted unreasonably when responding to his complaints.

Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Shell alleges that defendants are liable for sex discrimination by having subjected him to a sexually hostile work environment.  To establish a hostile work environment claim, Shell must show that (1) he is a member of a protected class, (2) he was subjected to unwelcome sexual harassment, (3) the harassment was based on his sex, (4) the harassment created a hostile work environment, and (5) defendants filed to take reasonable care to prevent and correct any sexually harassing behavior.  *Bowman v. Shawnee State univ.,* 220 F.3d 456, 462-63.

Defendants concede, for purposes of this summary judgment motion, that Shell can satisfy his burden of proof as to the first two elements of the hostile work environment test.  Defendants attempt to relegate Shelton's conduct to "joking" behavior, which was not severe or pervasive enough to alter the terms and conditions of Shell's employment.  Plaintiff, however, points to the following incidents in support of his claim that the work environment at Hilliard Lyons was sufficiently hostile to interfere with his work performance such that he was compelled to work from home whenever possible, and ultimately, to resign his position at Hilliard Lyons:

- Commenting on Shell's "bootie" in a voice and manner meant to demean Shell.

- Sending Shell a brochure for homosexual cruises and vacations and instructing an assistant, Rebecca Lynch, to leave a note stating that

Shell's manager, Brian Donaldson, had asked that Shell not receive these types of materials at work.

- Placing Shell's picture on a copy of the homosexual cruise brochure and distributing it at a broker's luncheon held by defendants.

- Altering the defendants' "Code of Ethics" to comment on the relationship between Shell and his girlfriend and distributing the document to other employees of defendants.

- Sending multiple e-mails containing sexually explicit photographs depicting a severely overweight, naked, unidentified female receiving oral sex from an unidentified male and insinuating that Shell was the male in the picture.

- Sending an e-mail containing a severely overweight and naked unidentified female sitting on the head of an unidentified male receiving oral sex entitled "How to Punish a Sex Offender" and insinuating that Shell was the unidentified male.

- Sending an e-mail captioned "Shell's girlfriend tries out his new hot tub!" which contained a picture of a severely overweight and naked female.

- Sending e-mails referring to Shell in degrading terms such as "lugnut."

- Sending an e-mail titled "A recent photo of Mike Shell lounging at his crib!" which contains a picture of an extremely hairy, naked, overweight male lying face down.

- Distributing a picture of a "penis putter" referring to a male employee and his genitalia as well as the sexual relationship between the male employee and his wife.

- Sending e-mails to another male broker, David O'Block, repeatedly asking him what a dildo sex toy tastes like.

- Sending an e-mail to David O'Block insinuating that O'Block's former girlfriend knew the size of Shelton's penis.

- Sending an e-mail to all office employees, including supervisor Brian Donaldson, entitled "Diet Ads" which referred to another male broker, Jim Gormley, being overweight.

- Posting documents on the refrigerator in the office kitchen and break room which was frequently visited by both employees and customers containing a picture of a male broker, Gormley, stating that Gormley was a homosexual and was involved in the pornography business.

- Distributing a document titled "Local Stockbroker Joins Gay Coalition" which stated that Gormley was a homosexual as well as insinuating that Gormley performed oral sex on other men.

Additionally, it is undisputed that Hilliard Lyons sexual harassment policy states that an employee experiencing sexual harassment may contact his direct supervisor to report sexual harassment. McDonald testified that Shell complained of Shelton's conduct to him on at least one occasion and as many as two to four different times while

he served as Shell's direct supervisor. Despite Shell's complaints to his supervisor, Shelton's conduct continued. When Donaldson became branch manager, Shelton's conduct not only continued, but escalated. Shell approached Donaldson in April 2003 to complain about several matters including the Code of Ethics revision referring to Shell's girlfriend. Donaldson admitted in his deposition that Shell expressed he was upset by Shelton's conduct. Donaldson further testified that during his meeting with Shelton, he became aware of the incident involving Shell's picture being placed on the homosexual travel brochure and the distribution of the brochure at the broker's luncheon. Although Donaldson verbally reprimanded Shelton for his behavior toward Shell, Shelton testified that there were at least two additional incidents where he sent Shell sexually explicit pictures following his reprimand from Donaldson. Another male employee, David O'Block, testified that he also complained about Shelton's conduct to his supervisors on multiple occasions. However, neither McDonald nor Donaldson took any action to reprimand Shell beyond conversations each had with Shelton. Shelton testified that he never received any type of written reprimand related to his conduct toward Shell or the other male brokers.

Taking these facts in a light favorable to Shell, a reasonable jury could find that Shell was subjected to a sexually hostile work environment at Hilliard Lyons and that the company was aware of Shelton's conduct, but failed to take prompt and effective corrective action. Accordingly, summary judgment is not appropriate on plaintiff's hostile work environment claim, and defendants' motion as to this claim will be **DENIED.**

## THRA Claim

Next, defendants assert that plaintiff's claim under the Tennessee Human Rights Act (THRA) is time-barred. Section 311(d) of the THRA provides that a civil cause of action . . . shall be brought within one year after the alleged discriminatory practice ceases. Tenn. Code Ann. § 4-21-311(d). The filing of a charge of discrimination with an administrative agency does not toll the statute of limitations under the THRA. *See Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir. 1989).

in the instant case, Shell resigned from Hilliard Lyons on August 15, 2003. Therefore, the last possible date that defendants could have engaged in any discriminatory action was August 15, 2003, and any claim under the THRA would have to have been brought by August 16, 2004. Shell did not file his complaint until May 12, 2005, nearly nine months after the THRA statute of limitations expired. As explained in *Puckett*, Shell's filing of administrative charges with the Tennessee Human Rights Commission and the EEOC in December 2003 does not toll the THRA statute of limitations. Accordingly, the defendants are entitled to summary on Shell's claim brought pursuant to the THRA and the motion for summary judgment will be **GRANTED** as to that claim.

## Breach of Contract Claim

Last, defendants assert that plaintiff's breach of contract claim based on PNC's Code of Ethics fails because the PNC Code of Ethics is not a binding contract under Tennessee law. The court agrees.

Shell alleges that the PNC Code of Ethics bestowed upon him a contractual right to be free from sexual harassment. He further claims that Hilliard Lyons breached this alleged contract by failing to protect him from Shelton's harassing behavior. Under Tennessee law, an employee handbook will constitute an employment contract only if it contains specific language demonstrating the employer's intent to be bound by its terms. *Rose v. Tipton Co. Public Works Dep't,* 953 S.W.2d 690, 692 (Tenn.App. 1997); *see also Brown v. City of Niota,* 214 F.3d 718, 721 (6th Cir. 2000). To the contrary, defendants' Code of Ethics contains a disclaimer that, "This code, however, does not, nor should it be construed to, imply an employment contract between you and PNC." Tennessee law is clear that a handbook will not give rise to contractual obligations on the part of the employer where it includes a disclaimer stating that the handbook is not a contract, or should not be construed as a contract. *Reed v. Alamo Rent-A-Car, Inc.,* 4 S.W.3d 677, 688 (Tenn.App. 1999); *Rhea v. Dollar Tree Stores, Inc.,* 395 F.Supp.2d 696, 707 (W.D.Tenn. 2005). Shell's argument that defendants' letter to him ten days after his resignation reminding Shell that he had continuing obligations to, for instance, not misuse any confidential PNC information, does not make the Code of Ethics a contract legally binding against defendants. Accordingly, the defendants are entitled to summary judgment on Shell's claim for breach of contract and the motion for summary judgment will be **GRANTED** as to that claim.

## Conclusion

For the reasons set forth above, defendants' motion for summary judgment [Doc. 68] is **DENIED** as to plaintiff's claim for a hostile work environment brought under

Title VII; and is **GRANTED** as to plaintiff's claims brought under the THRA and for breach of contract. The parties will prepare the case for trial which is scheduled for **September 24, 2007.**

**IT IS SO ORDERED.**

**ENTER:**

_____ s/ Thomas W. Phillips _____
United States District Judge